**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Chapter 15 |
| Sciens Group Alternative Strategies PCC | ) | |
| Limited, *et al.*,[1] | ) | Case No. 26- 90706 (CML) |
| | ) | |
| Debtors in Foreign Proceedings. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | |

**VERIFIED PETITION FOR RECOGNITION OF FOREIGN**
**INSOLVENCY PROCEEDINGS AND MOTION FOR ORDER GRANTING**
**RELATED RELIEF PURSUANT TO 11 U.S.C. §§ 1515, 1517, 1520 AND 1521**

---

[1] The Debtors in these chapter 15 cases (the "Chapter 15 Cases") and their Guernsey registration numbers are: (i) Sciens Group Alternative Strategies PCC Limited (CMP38959); (ii) SAM Trading Holdings PCC Limited (CMP35564); and (iii) SAM Diversified Holdings PCC Limited (CMP32204). The Debtors' address for service of process is Ground Floor, Dorey Court, Admiral Park, St Peter Port, GY1 2HT, Guernsey.

**TABLE OF CONTENTS**

**Page**

RELIEF REQUESTED ............................................................................................................... 1

PRELIMINARY STATEMENT ................................................................................................. 2

JURISDICTION AND VENUE ................................................................................................. 4

BACKGROUND ......................................................................................................................... 5

A.   General Background and History ................................................................................... 5

B.   Events Precipitating Commencement of the Guernsey Proceedings and Appointments of Liquidators .......................................................................................................................... 9

C.   The Guernsey Proceedings .......................................................................................... 12

REQUIRED DISCLOSURES ................................................................................................... 15

BASIS FOR RELIEF REQUESTED ........................................................................................ 15

A.   Legal Standard ............................................................................................................. 16

B.   The Guernsey Proceedings Should be Recognized Under Chapter 15 ......................... 21

C.   The Guernsey Proceedings are "Foreign Main Proceedings" Because the Debtors' Centers of Main Interests are in Guernsey .................................................................................... 32

D.   In the Alternative, the Guernsey Proceedings are "Foreign Nonmain Proceedings" ........... 35

E.   Discretionary Relief is Necessary and Appropriate to Effectuate the Guernsey Proceedings and Should be Granted ................................................................................................... 36

NOTICE ................................................................................................................................... 39

NO PRIOR REQUEST ............................................................................................................. 39

VERIFICATION OF CHAPTER 15 PETITION ...................................................................... 41

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
374 B.R. 122 (Bankr. S.D.N.Y. 2007), *aff'd,* 389 B.R. 325 (S.D.N.Y. 2008)......................20, 33

*Cunard S.S. Co. Ltd. v. Salen Reefer Svcs. A.B.*,
773 F.2d 452 (2d Cir. 1985).................................................................................................38

*Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*,
600 F.2d 1184 (5th Cir. 1979)..............................................................................................38

*Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*
737 F.3d 238 (2d Cir. 2013).................................................................................................21

*In re ABC Learning Ctrs.*,
445 B.R. 318 (Bankr. D. Del. 2010), aff'd 728 F.3d 301 (3rd Cir. 2013)...........................*passim*

*In re Ashapura Minechem Ltd*,
480 B.R. 129 (Bankr. S.D.N.Y. 2012)..................................................................................27

*In re Avanti Commc'ns Grp. PLC*,
582 B.R. 603 (Bankr. S.D.N.Y. 2018)..................................................................................37

*In re Berau Cap. Res. Ltd.*,
540 B.R. 80 (Bankr. S.D.N.Y. 2015).....................................................................................21

*In re Betcorp Ltd.*,
400 B.R. 266 (Bankr. D. Nev. 2009)..................................................................................*passim*

*In re BOS Sols LTD.*,
Case No. 20-32465 (DRJ) (Bankr. S.D. Tex.) (May 19, 2020)...............................................38

*In re CB&I Ltd.*, et al.,
Case No. 23-90795 (CML) (Bankr. S.D. Tex.) (Mar. 22, 2024)..............................................38

*In re Creative Fin. Ltd.*,
543 B.R. 498 *(Bankr S.D.N.Y.)*.............................................................................................20, 35

*In re Entrec Corp., et al.*,
Case No. 20-32643 (MI) (Bankr. S.D. Tex.) (May 29, 2020).................................................38

*In re Fairfield Sentry Ltd.*,
714 F.3d 127 (2d Cir. 2013)...........................................................................................16, 19, 35

*In re Fairfield Sentry Ltd.*,
No. 10 Civ. 7311 (GBD), 2011 WL 4357421 at *10 n.8 (S.D.N.Y. Sept. 16, 2011)..................20

*In re Fossil (UK) Glob. Servs. Ltd.*,
Case No. 25-90525 (CML) (Bankr. S.D. Tex.) (Oct. 21, 2025)......................................................4

*In re Fossil (UK) Glob. Servs. Ltd.*,
Case No. 25-90525 (CML) (Bankr. S.D. Tex.) (Nov. 12, 2025)....................................4, 21, 38

*In re Fracmaster, Ltd.*,
237 B.R. 627 (Bankr. E.D. Tex. 1999)............................................................................................24

*In re Geden Holdings, Ltd.*,
674 B.R. 732 (Bankr. S.D. Tex. 2025)............................................................................................18

*In re Manley Toys Ltd.*,
580 B.R. 632 (Bankr. D.N.J. 2018)..................................................................................................26

*In re Modern Land (China) Co., Ltd.*,
641 B.R. at 768 .........................................................................................................19, 20, 33, 35

*In re OAS S.A.*,
533 B.R. 83 (Bankr. S.D.N.Y. 2015)...............................................................................................34

*In re Ocean Rig UDW Inc.*,
570 B.R. 687 (Bankr. S.D.N.Y. 2017).............................................................................................5

*In re Poymanov*,
571 B.R. 24 (Bankr. S.D.N.Y. 2017)..............................................................................................27

*In re Q'Max Sols, Inc.*,
Case No. 20-34791 (MI) (Bankr. S.D. Tex.) (Oct. 29, 2020) ....................................................38

*In re Ran*,
607 F.3d 1017, (5th Cir.) .....................................................................................................*passim*

*In re Rock Int'l Inv. Inc.*,
Case No. 20-35623 (MI) (Bankr. S.D. Tex.) (Dec. 11, 2020)....................................................38

*In re Serviços de Petróleo Constellation S.A.*,
600 B.R. 237, 270 (Bankr. S.D.N.Y. 2019)...............................................................................32, 34

*In re Siu-Fung Ceramics Holdings Ltd.*,
2026 WL 382424 at *21 (Bankr. S.D. Tex. Feb. 10, 2026).......................................17, 21, 23

*In re SPhinX, Ltd.*,
351 B.R. 103, (Bankr. S.D.N.Y. 2006));......................................................................18, 19, 33

*In re Stanford Int'l Bank, Ltd.*,
2012 WL 13093940 at \*18 (N.D. Tex. July 30, 2012)..................................................... passim

*In re Vitro, S.A.B. de C.V.*,
470 B.R. 408 (Bankr. N.D. Tex. 2012),.............................................................22, 23, 32, 36

*In re Xenfin Fund I Trading Ltd*,
Case No. 21-10164 (MG) (Bankr. S.D.N.Y.) (Jan. 16, 2021)....................................................25

*In re Yukos Oil Co.*,
321 B.R. 396, 407 (Bankr. S.D. Tex. 2005) ...........................................................................4, 21

*Millennium Glob. Emerging Credit Master Fund Ltd.*,
458 B.R. 63 (Bankr. S.D.N.Y. 2011)......................................................................19, 20, 21, 36

**Rules and Statutes**

11 U.S.C. § 101..............................................................................................................*passim*

11 U.S.C. § 105....................................................................................................... 1, 5, 38

11 U.S.C. § 109..............................................................................................................*passim*

11 U.S.C. § 304....................................................................................................... 24, 36

11 U.S.C. § 522.................................................................................................................. 37

11 U.S.C. § 544.................................................................................................................. 37

11 U.S.C. § 545.................................................................................................................. 37

11 U.S.C. § 547.................................................................................................................. 37

11 U.S.C. § 548.................................................................................................................. 37

11 U.S.C. § 550.................................................................................................................. 37

11 U.S.C. § 724.................................................................................................................. 37

11 U.S.C. § 1501 ....................................................................................................... 16, 27, 38

11 U.S.C. § 1502............................................................................................................*passim*

11 U.S.C. § 1507 ............................................................................................................. 1, 5, 38

11 U.S.C. § 1509 .................................................................................................................. 22

11 U.S.C. § 1515 .............................................................................................................. *passim*

11 U.S.C. § 1516 ............................................................................................................. 18, 32

11 U.S.C. § 1517 .............................................................................................................. *passim*

11 U.S.C. § 1519 .................................................................................................................. 37

11 U.S.C. § 1520 .............................................................................................................. *passim*

11 U.S.C. § 1521 .............................................................................................................. *passim*

11 U.S.C. § 1522 .................................................................................................................. 37

28 U.S.C. § 157 ..................................................................................................................... 4

28 U.S.C. § 1334 ................................................................................................................... 4

28 U.S.C. § 1410 ................................................................................................................... 4

Fed. R. Bankr. P. 1007 ..................................................................................................... 15, 22

Fed. R. Bankr. P. 2002 ....................................................................................................... 5, 39

Fed. R. Bankr. P. 7007 .......................................................................................................... 22

## Other Authorities

H. Rep. No. 109-31, pt. 1 (2005) ........................................................................................... 18

Andrew Richard Victor Morrison and David Martin Griffin (the "Petitioners" or the "Foreign Representatives"), the joint voluntary liquidators and foreign representatives of the Guernsey voluntary liquidation proceedings (the "Guernsey Proceedings") of (i) Sciens Group Alternative Strategies PCC Limited ("SGAS"), (ii) SAM Trading Holdings PCC Limited ("SAM Trading") and (iii) SAM Diversified Holdings PCC Limited ("SAM Diversified", and together with SGAS and SAM Trading, the "Guernsey Funds" or the "Debtors" and each a "Guernsey Fund" or "Debtor") pursuant to Sections 391 to 405 of Part XXII of the Companies (Guernsey) Law 2008 (the "Guernsey Companies Law"), of the laws of the Bailiwick of Guernsey ("Guernsey"), by and through their undersigned counsel, respectfully submit this *Verified Petition for Recognition of Foreign Insolvency Proceedings and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 1515, 1517, 1520 and 1521* (the "Verified Petition").

This Verified Petition is filed in furtherance of the Official Form Petitions (together with this Verified Petition, the "Petitions") filed contemporaneously herewith. In support of this Verified Petition, the Petitioners rely upon and incorporate by reference: (i) the *Declaration of Andrew Richard Victor Morrison in Support of Verified Petition Under Chapter 15 for Recognition of Foreign Insolvency Proceedings and First Day Pleadings* (the "Foreign Representative Declaration"); and (ii) the *Declaration of Helena Lavin in Support of Verified Petition Under Chapter 15 for Recognition of Foreign Insolvency Proceedings and First Day Pleadings* (the "Guernsey Counsel Declaration"), both filed concurrently herewith. In further support of this Verified Petition, the Petitioners respectfully represent to the Court as follows:

## RELIEF REQUESTED

1. By this Verified Petition, the Petitioners request that the Court enter an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order") pursuant to sections 105(a), 1507, 1515, 1517, 1520 and 1521 of title 11 of the United States Code (the

1

"Bankruptcy Code"): (i) commencing cases for the Debtors under chapter 15 of the Bankruptcy Code ancillary to the Guernsey Proceedings (the "Chapter 15 Cases"); (ii) granting recognition of the Guernsey Proceedings pursuant to section 1517 of the Bankruptcy Code as "foreign main proceedings" (as defined in section 1502(4) of the Bankruptcy Code) of each of the Debtors, and all relief included therewith as provided in section 1520 and related relief under sections 1521(a)(1)–(2) of the Bankruptcy Code;[2] (iii) recognizing the Petitioners as the "foreign representatives" (as defined in section 101(24) of the Bankruptcy Code) of the Guernsey Proceedings for the Debtors for purposes of the Chapter 15 Cases; (iv) granting additional discretionary relief pursuant to section 1521(a) of the Bankruptcy Code; and (v) granting such other and further relief as the Court deems just and proper.

## PRELIMINARY STATEMENT

2.     On each of the Guernsey Liquidation Dates (as defined below), the voting members of the applicable Debtors authorized the Guernsey Liquidation Resolutions (as defined below) to place each Debtor into voluntary liquidation proceedings in Guernsey pursuant to the Guernsey Companies Law.[3]

3.     The Debtors are each authorized, open-ended investment funds incorporated under the laws of Guernsey, regulated by the Guernsey Financial Services Commission,[4] with registered offices in Guernsey.  As of the Guernsey Liquidation Dates, the majority investor in each of the Guernsey Funds was the SAC I segregated account of Spectrum Allocation Ltd ("Spectrum"), a Bermudan investment fund.

---

[2]     Alternatively, should the Court decline to recognize the Guernsey Proceedings as the foreign main proceedings for the Debtors, the Petitioners respectfully request that the Court recognize such proceedings as foreign nonmain proceedings (as defined in section 1502(5) of the Bankruptcy Code) and grant appropriate relief.
[3]     True and correct copies of the Guernsey Liquidation Resolutions are attached hereto as **Exhibits B** through **D**.
[4]     The Liquidators have requested deregistration of the Guernsey Funds' authorizations with the Guernsey Financial Services Commission, which may be granted during the pendency of these Chapter 15 Cases.

4.      Prior to the commencement of the Guernsey Proceedings, the Debtors' primary activity was the acquisition and holding of diversified pools of investments through a network of affiliated investment holding companies and their direct and indirect subsidiaries (collectively, the "Sciens Group").

5.      As detailed further below, prior to the initiation of the Guernsey Proceedings, Spectrum conducted a review into the Debtors' investments in the Sciens Group in response to delays in the processing of redemptions.  Following that review, Spectrum determined that it was necessary to appoint liquidators over the Guernsey Funds and subsequently took steps to exercise its rights as a member under the Guernsey Companies Law to initiate the voluntary liquidations of the Guernsey Funds.

6.      Through the Guernsey Proceedings, the Guernsey Funds are in the process of liquidating their diversified investments and returning value to their creditors and shareholders. Based on the Liquidators' review to date, the Guernsey Funds are directly or indirectly invested in certain affiliated entities within the Sciens Group that have direct or indirect investments or assets located in the United States.  Accordingly, the Petitioners are seeking recognition of the Guernsey Proceedings to facilitate their ongoing review of, and potential realization on, such assets believed to be located in the United States.

7.      Guernsey is the proper venue for the main liquidation proceedings of the Debtors, as Guernsey is unquestionably where the Debtors have their centers of main interest ("COMI"). As explained in detail below, each Debtor maintains its registered office in Guernsey, and, as such, each Debtor is entitled to a presumption that its COMI is in Guernsey.  Additionally, Guernsey is the location of the majority of the Guernsey Funds' creditors and most of the Guernsey Funds'

bank accounts. [5]  Guernsey is also where the Guernsey Funds file taxes and are subject to regulation, and the contracts governing the majority of the Guernsey Funds' liabilities are subject to Guernsey law.  Accordingly, the Petitioners respectfully submit that the Guernsey Proceedings should be recognized as foreign main proceedings.

## JURISDICTION AND VENUE

8.     The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference to Bankruptcy Judges from the United States District Court for the Southern District of Texas, entered May 24, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

9.     Venue is proper in this district pursuant to 11 U.S.C. § 109(a) and 28 U.S.C. § 1410(1) because the Guernsey Funds' principal assets in the United States are held in this district. Each of the Guernsey Funds has a joint interest in a retainer for their counsel, Bonds Ellis Eppich Schafer Jones LLP, in the aggregate amount of $60,000 held in a bank account with Bank of America (the "Retainer") in Houston, Texas.  Foreign Representative Declaration ¶ 44.

10.     Courts in this district have uniformly held that the presence of a retainer, as of the Petition Date, in the district where the Petition is filed, is sufficient to establish venue in that district.  *See e.g.*, Order, *In re Fossil (UK) Glob. Serv.s Ltd.*, Case No. 25-90525 (CML) (Bankr. S.D. Tex.) (Nov. 12, 2025) ECF No. 39 (finding venue within the Southern District of Texas when the debtor's U.S. property as of the petition date took the form of an interest in a retainer account held in Houston, Texas);[6] *In re Yukos Oil Co.*, 321 B.R. 396, 407 (Bankr. S.D. Tex. 2005) (finding chapter 15 petition properly filed in Southern District of Texas where the debtor deposited funds

---

[5]     The Guernsey Funds hold, on aggregate, seven bank accounts, four of which are based in Guernsey.  Foreign Representative Declaration ¶ 25.

[6]     Verified Petition, *In re Fossil (UK) Glob. Serv.s Ltd.*, Case No. 25-90525 (CML) (Bankr. S.D. Tex.) (Oct. 21, 2025) ECF No. 6 at ¶ 22, 58 (describing the retainer account).

4

in a Texas bank account two hours before filing the petition for recognition).  *See also In re Ocean Rig UDW Inc.*, 570 B.R. 687, 700 (Bankr. S.D.N.Y. 2017) (finding venue when New York counsel held a debtor's retainer in a New York bank account).

11.     The statutory bases for the relief requested herein are sections 105(a), 1507, 1515, 1517, 1520 and 1521 of the Bankruptcy Code, rule 2002 of the Federal Rules of Bankruptcy Procedure, Fed. R. Bankr. P. 2002 (the "Bankruptcy Rules"), rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules") and the *Procedures for Complex Cases in the Southern District of Texas* (the "Complex Case Procedures").

**BACKGROUND**

**A.      General Background and History**

> *i.      Overview*

12.     Each of the Guernsey Funds is an investment fund incorporated under the laws of Guernsey.  Each of the Guernsey Funds maintains its registered office in Guernsey.  The dates of formation of the Guernsey Funds are as follows: (i) for SAM Diversified, March 18, 1997; (ii) for SAM Trading, July 30, 1999; and (iii) for SGAS, November 20, 2001.

13.     Prior to the commencement of the Guernsey Proceedings, the Debtors' primary activity was the acquisition and holding of diversified pools of investments through the Sciens Group.  Through the Guernsey Proceedings, the Guernsey Funds are in the process of liquidating their diversified investments and returning value to their creditors and shareholders.

14.     The Guernsey Proceedings were initiated due to asset realization delays identified by the Guernsey Funds' beneficial investor, Spectrum.  As described below, in the face of such delays, Spectrum determined that it was necessary to appoint liquidators over the Guernsey Funds and exercised its rights as a member under the Guernsey Companies Law to initiate the Guernsey Funds' voluntary liquidations.

5

15.     Since their appointments in the Guernsey Proceedings, the Liquidators have sought to diligently assess the Sciens Group's deeply complex corporate structure (which includes dozens of related entities with intertwined investments across various jurisdictions) and to liquidate the Guernsey Funds' investments in the Sciens Group.  Entities within the Sciens Group are typically structured such that their management and control is bifurcated from their beneficial ownership, meaning that upstream investors (like the Guernsey Funds) are reliant on downstream managers for information on their investments and for the liquidation of those assets.  In connection with their efforts, the Liquidators engaged with the Guernsey Funds' former manager Sigma Asset Management (Guernsey) Limited ("Sigma") and related party manager entities in the wider Sciens Group to understand the timeline and prospects of any asset realization.

16.     In the months since their appointment, the Liquidators have faced difficulties obtaining complete and timely information on downstream asset realizations.  For example, despite assurances from managers within the Sciens Group that certain downstream asset realizations would take place by the end of 2025 (such that distributions from the broader Sciens Group would flow up to the Debtors and be available to be returned to their creditors and shareholders), no such distributions were made until several months into 2026 (for reasons that remain unexplained).

17.     The Liquidators' ability to perform their duty to return value to the creditors and shareholders of the Guernsey Funds has been impaired by the process of engaging with this network of related parties.  As a result, the Liquidators lack sufficient visibility into either the holdings and activities of the Sciens Group or the timing of when the Liquidators can expect to see the proceeds of asset realizations.

18.     Based on the Liquidators' review to date, the Guernsey Funds are invested in certain affiliated entities within the Sciens Group that themselves have direct or indirect

6

investments or assets located in the United States. The intention of the Foreign Representatives in seeking recognition of the Guernsey Proceedings is to facilitate the Liquidators' ongoing review of, and potential realization on, such assets believed to be located in the United States and held by affiliates of the Sciens Group.

19.    As of the date of the submission of the Verified Petition (the "Petition Date"), the Debtors have no employees. As described in the Foreign Representative Declaration, Guernsey is the location of the majority of the Guernsey Funds' creditors and most of the Guernsey Funds' bank accounts. Guernsey is also where the Guernsey Funds file taxes and are regulated. Additionally, the law governing the majority of outstanding liabilities of the Guernsey Funds is Guernsey law.

### ii.    The Guernsey Funds' Corporate Structure

20.    The Guernsey Funds' organizational structure is as follows:



21.    SAM Trading, SAM Diversified, and SGAS are each protected cell companies (a corporate form with the ability to segregate assets and liabilities among distinct "cells" within a single corporate entity).

22.    The structure of the Guernsey Funds is typical of investment fund entities, with separate classes of management (sponsor) shares and participating (investor or preference) shares

7

issued in their cells.  Although structures may vary, management shares generally do not carry voting rights when preference shares have been issued.  Unlike preference shares, management shares are not redeemable and do not entitle their holders to dividends.

23.     As of the Guernsey Liquidation Dates (as defined below) and since August 2021, the majority beneficial investor in each of the Guernsey Funds was Spectrum.

   *iii.*  *The Guernsey Funds' Offices*

24.     SGAS, SAM Trading and SAM Diversified each have their registered offices at Ground Floor, Dorey Court, Admiral Park, St Peter Port, GY1 2HT, Guernsey.

25.     The Liquidators manage the Guernsey Funds from their offices in the Cayman Islands at c/o FTI Consulting, Suite 3206, 53 Market Street, Camana Bay, Grand Cayman, KY1-1203, Cayman Islands (the "JVL Offices").  The Liquidators include: (i) Andrew Richard Victor Morrison and (ii) David Martin Griffin, both of whom are residents of the Cayman Islands.

26.     Notwithstanding the location of the Liquidators and JVL Offices, the Guernsey Funds' economic activities are situated in Guernsey, which is the location of the majority of their creditors, their operating bank accounts, applicable regulators and the Royal Court of Guernsey (the "Guernsey Court") with ultimate oversight of the Guernsey Proceedings.

   *iv.*  *Assets and Liabilities*

27.     As noted above, the Guernsey Funds' primary assets are their diversified investment holdings in various entities within the Sciens Group.  On information and belief, based on the Liquidators' ongoing review to date, the Guernsey Funds have investments in certain entities within the Sciens Group that themselves have direct or indirect investments or assets located in the United States.

28.     The primary non-cash assets of each of the protected cells of SAM Trading and SAM Diversified (and, through such cells, of SAM Trading and SAM Diversified) are their

respective investments in SAM Global Diversified Investments Limited and SAM Opportunity Investments Limited, both of which are incorporated in and have their registered offices in Guernsey, and through which SAM Trading and SAM Diversified have indirect investments in the wider Sciens Group.[7]

29.     Other than investments in the Sciens Group, the Debtors' remaining assets include cash amounts held in certain bank accounts, as well as joint interests in a retainer for counsel held in an account in this district (as described above).

30.     As described in the Foreign Representative Declaration, the Guernsey Funds maintain their operating bank accounts in Guernsey, although certain of the Guernsey Funds also maintain limited-purpose bank accounts in the Cayman Islands for payment of liquidation fees.

31.     As of the Guernsey Liquidation Dates, the Guernsey Funds' liabilities consisted of various general unsecured claims and shareholder interests. The majority of the Guernsey Funds' liabilities are governed by Guernsey law. In their dealings prior to the Guernsey Liquidation Dates, the Guernsey Funds identified themselves to prospective investors in their scheme particulars and prospectuses as entities incorporated in Guernsey and subject to potential winding up pursuant to the Guernsey Companies Law.

B.     **Events Precipitating Commencement of the Guernsey Proceedings and Appointments of Liquidators**

i.     *Pre-Liquidation Review*

32.     In 2015, before transferring its interests in the Guernsey Funds to Spectrum, the Guernsey Funds' prior beneficial owner initiated redemption requests in respect of its full positions

---

[7]     SAM Global Diversified Investments Limited and SAM Opportunity Investments Limited have both commenced voluntary liquidations under the Guernsey Companies Law in substantially similar form to SGAS, SAM Trading and SAM Diversified. However, while reserving all rights, SAM Global Diversified Investments Limited and SAM Opportunity Investments Limited are not seeking chapter 15 recognition at this time.

in the Guernsey Funds.  Those redemptions were paid over an unusually extended period (and still have not been fully paid).

33.     Following the transfer of the interests in the Guernsey Funds to Spectrum, Spectrum engaged closely with related party managers within the Sciens Group regarding the status of these unpaid redemptions and related issues relevant to Spectrum's interests in the Guernsey Funds.

34.     Spectrum also engaged FTI Consulting (Cayman) Ltd to review the limited information available in relation to the Guernsey Funds' investments within the Sciens Group. That review (together with additional information obtained during a parallel liquidation proceeding of another Sciens Group entity) pointed to further informational gaps and procedural delays in asset realizations. [8]

35.     Given the narrow universe of readily available information regarding the prospects for redemptions to flow from downstream asset realizations within the Sciens Group's complex investment structure, and the difficulties of engaging with the various related party investment managers, Spectrum determined that it was necessary to appoint liquidators over the Guernsey Funds and subsequently took steps to exercise its rights as a member under the Guernsey Companies Law to initiate the voluntary liquidations of the Guernsey Funds.

### ii.     Appointments of the Liquidators

36.     **SGAS and SAM Trading**: On May 19, 2025, Spectrum requested that Sigma arrange for the circulation of resolutions to place SGAS and SAM Trading into voluntary liquidation proceedings.  On June 13, 2025, (the "SGAS/SAM Trading Liquidation Date"), Spectrum signed such resolutions (as a member representing not less than 75% of the total voting

---

[8]     The Liquidators were also appointed as joint official liquidators in June 2022 in connection with the Cayman Islands liquidation of another fund within the Sciens Group, Sciens Alternative Assets Recovery Fund II ("SAARF II").  Spectrum and SAM Global Diversified Investments Limited, which is wholly-owned by SAM Trading, hold direct interests in SAARF II.

rights of eligible members of each of SAM Trading and SGAS), thereby commencing the liquidations and appointing the Liquidators to oversee the liquidation proceedings (the respective resolutions, the "SAM Trading Liquidation Resolution" and the "SGAS Liquidation Resolution").[9]

37.     **SAM Diversified**: On July 18, 2025, Spectrum requested that Sigma arrange for the circulation of resolutions to place SAM Diversified into a voluntary liquidation proceeding. On August 13, 2025, (the "SAM Diversified Liquidation Date," and together with the SGAS/SAM Trading Liquidation Date, the "Guernsey Liquidation Dates"), Spectrum signed such resolutions (as a member representing not less than 75% of the total voting rights of eligible members of SAM Diversified), thereby commencing the liquidation and appointing the Liquidators to oversee the liquidation proceedings (such resolutions, the "SAM Diversified Liquidation Resolution").[10]

38.     The Guernsey Liquidation Resolutions conferred upon the Liquidators the sole power to wind down the Guernsey Funds, including all available powers under the Guernsey Companies Law and each Guernsey Fund's respective articles of incorporation.  Such powers include, among others, the authority to transact the business of the Guernsey Funds, review and assess the Guernsey Funds' assets and financial positions, establish and pay creditor claims from the available assets of the Guernsey Funds, realize and liquidate the assets of the Guernsey Funds, bring and defend civil actions on behalf of the Guernsey Funds (including representing the Guernsey Funds as foreign representatives in a chapter 15 proceeding in the United States) and

---

[9]     True and correct copies of the SGAS Liquidation Resolution and the SAM Trading Liquidation Resolution are attached hereto as **Exhibit B** and **Exhibit C**, respectively.

[10]     A true and correct copy of the SAM Diversified Liquidation Resolution is attached hereto as **Exhibit D**. The SAM Trading Liquidation Resolution, the SGAS Liquidation Resolution and the SAM Diversified Liquidation Resolution are collectively referred to herein as the "Guernsey Liquidation Resolutions."

take other steps authorized by law as necessary to effectuate the orderly wind down of the Guernsey Funds.

**C.      The Guernsey Proceedings**

39.      The Guernsey Funds commenced liquidation under the Guernsey Proceedings on the Guernsey Liquidation Dates pursuant to the Guernsey Liquidation Resolutions.  Following each Guernsey Liquidation Date, the Liquidators transmitted the relevant Guernsey Liquidation Resolutions to the Guernsey Registrar of Companies (the "Guernsey Registrar"), which recorded the Guernsey Liquidation Resolutions.  The Liquidators have also taken various steps to maximize recoveries, to facilitate an orderly liquidation of the Guernsey Funds and to ensure that all stakeholders are treated fairly and with due consideration.

40.      Among other things, the Liquidators have directed Guernsey and United States counsel, provided regular updates to applicable Guernsey regulators as to the Liquidators' progress, negotiated with representatives of the Guernsey Funds' counterparties, reviewed assets and outstanding liabilities, made necessary applications to the Guernsey Court for approval of certain activities and made distributions to creditors from the available assets of the Guernsey Funds (as appropriate and in compliance with the Guernsey Companies Law).

*i.      Creditor Meetings and Communications*

41.      During the Guernsey Proceedings, the Liquidators have, from time to time and pursuant to the Guernsey Companies Law, convened meetings of creditors of the Guernsey Funds to provide status reports on the Liquidators' ongoing efforts.  The first meetings of creditors were convened: (i) for SGAS, on July 11, 2025; (ii) for SAM Trading, on July 11, 2025; and (iii) for SAM Diversified, on September 9, 2025.  In advance of such meetings and pursuant to the Guernsey Companies Law, the Liquidators circulated to known creditors notices describing the appointment of the Liquidators, the rights of creditors in connection with the Guernsey

Proceedings and under the Guernsey Companies Law, instructions for participation in creditors meetings and invitations to submit proofs of debt. Such notices make clear to creditors that the Guernsey Companies Law governs both the appointments of the Liquidators and the Guernsey Proceedings themselves.

*ii.     Asset Realization Efforts and Distributions*

42.     As of the Petition Date, the Liquidators have made distributions in connection with the protected cells of SGAS. As of the SGAS/SAM Trading Liquidation Date, SGAS had two active protected cells: Blue Omega and Green Omicron.

43.     **Blue Omega Distributions**: Prior to its closure, Blue Omega held a portfolio of liquid securities that were realized in June 2025 by the cell's independent trading advisor, Masters Capital Management, LLC. The Liquidators made initial distributions from the proceeds of Blue Omega on September 23, 2025, and subsequently made a final distribution on October 9, 2025. The Liquidators thereafter closed Blue Omega on November 7, 2025.

44.     **Green Omicron Distributions**: Green Omicron's assets include investments in SGAS ICAV ("SGAS ICAV"), an Irish investment holding company. After the Liquidators' appointment, the Liquidators became aware that the Sciens Alternative Strategies Fund, an Irish sub-fund of SGAS ICAV, held an investment in a separate Irish sub-fund of SGAS ICAV known as Sciens Steamboat Fund ("Steamboat"). Steamboat's portfolio consisted of listed debt and equity securities. Following the appointment of the Liquidators over SGAS, that portfolio was liquidated by Sciens Group Risk Services Limited, the alternative investment fund manager for SGAS ICAV, on the instruction of the SGAS ICAV directors. In connection with such liquidation, Green Omicron received an initial distribution on August 18, 2025. The Liquidators subsequently made a distribution to applicable stakeholders on September 16, 2025. On May 29, 2026, Green

13

Omicron received a further distribution from SGAS ICAV.  The broader liquidation of Green Omicron as part of the Guernsey Proceeding of SGAS remains ongoing.

*iii.     Applications to the Guernsey Court*

45.     On September 2, 2025, the Liquidators made an application to the Guernsey Court for approval of a funding agreement between Spectrum and SGAS.  Following oral direction from the Guernsey Court during the hearing, the Liquidators withdrew the application.  The application was withdrawn because cash was available to fund liquidation costs from realizations made during the liquidation (the Court's view was that the realized cash, not borrowed funds, should be utilized for liquidation costs rather than being distributed to shareholders).

46.     Also on September 2, 2025, the Liquidators made an application to the Guernsey Court for approval of funding agreements between Spectrum and each of SAM Diversified and SAM Trading.  The Guernsey Court approved those funding agreements pursuant to orders dated September 15, 2025.

*iv.     Continued Engagements with Sigma and Related Parties*

47.     The Liquidators have sought to engage with Sigma, as well as related party manager entities in the wider Sciens Group, to establish the prospects and timelines for realizing assets and progress of the wind-downs of the Guernsey Funds.  Notwithstanding the Liquidators' efforts, Sigma and the Sciens Group entities have not provided the Liquidators with adequate visibility over underlying assets within the Sciens Group and how they are being realized.

48.     Sigma has indicated to the Liquidators that management of underlying assets is the responsibility of affiliated companies within the Sciens Group.  Despite representations from the various Sciens Group parties that further asset realizations would take place prior to the end of the 2025 calendar year, none were forthcoming for reasons that remain unexplained (the next distribution was not made to Green Omicron until May 2026).

**REQUIRED DISCLOSURES**

49.     The Petitioners hereby provide the following disclosures in accordance with

Bankruptcy Rule 1007(a)(4):

     i.     The following disclosure identifies for the Court any corporation, other than a governmental unit, that holds 10% or more of any class of each of the Debtors' equity interests:

          a)     100% of the voting participating redeemable preference shares of each of SGAS, SAM Trading and SAM Diversified (through their respective protected cells) are held by the SAC I segregated account of Spectrum.

          b)     100% of the non-voting management shares of each of SAM Trading and SAM Diversified are held by Sigma.

          c)     100% of the non-voting management shares of SGAS, are held by Sciens FOF Holdings (as defined in the Foreign Representative Declaration).

     ii.     Other than the Verified Petition, the Debtors do not have pending petitions with the Bankruptcy Court for relief under chapter 15 or any other chapter of title 11 of the United States Code.

     iii.     The Guernsey Proceedings are the only foreign proceedings, as that term is defined in section 101(23) of the Bankruptcy Code, of the Debtors presently open as of the Petition Date.

     iv.     As of the Petition Date, other than Andrew Richard Victor Morrison and David Martin Griffin, no other persons are authorized to administer any foreign proceeding of the Debtors.

     v.     As of the Petition Date, none of the Debtors is a party to any litigation in the United States that either is pending or for which the period for further appeal has not run.

**BASIS FOR RELIEF REQUESTED**

50.     The Court should grant the Verified Petition and recognize the Guernsey

Proceedings as the foreign main proceedings for the Debtors. Chapter 15 of the Bankruptcy Code

was specifically designed to assist foreign representatives such as the Petitioners in the

performance of their duties. A central goal of chapter 15 is to "provide effective mechanisms for

15

dealing with cases of cross-border insolvency while promoting international cooperation, legal certainty, fair and efficient administration of cross-border insolvencies, protection and maximization of debtors' assets, and the rescue of financially troubled businesses." *In re Fairfield Sentry Ltd.*, 714 F.3d 127, 132 (2d Cir. 2013) (citing 11 U.S.C. § 1501(a)) (internal quotation omitted). Each of the procedural requirements of section 1515 of the Bankruptcy Code are satisfied, as set out below. Notably, the Petitioners are the duly appointed "foreign representatives" of the Guernsey Proceedings with respect to each Debtor, and it is clear that the Guernsey Proceedings are "foreign proceedings" for purposes of chapter 15. Further, each Debtors' COMI unquestionably is in Guernsey, given that each of the Debtors is incorporated in Guernsey, has its registered office in Guernsey and maintains bank accounts in Guernsey. Foreign Representative Declaration ¶¶ 19, 25. Guernsey is likewise the location of the majority of the Debtors' creditors and is where the Debtors' creditors expect the Guernsey Proceedings to be situated. *Id*. ¶¶ 21, 26.

51. In the alternative, although the Debtors are confident that the Guernsey Proceedings are foreign main proceedings within the definition of section 1502(4) of the Bankruptcy Code, if this Court declines to recognize the Guernsey Proceedings as the foreign main proceedings, the Debtors are eligible for nonmain recognition and relief on the basis set out below.

**A.     Legal Standard**

> *i.     Recognition of a Chapter 15 Petition*

52. Chapter 15 petitions are brought to seek recognition of "foreign proceedings." Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as "a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor

16

are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. § 101(23).

53.     Courts in the Fifth Circuit have adopted a seven-prong analysis of section 101(23) for evaluating what constitutes a "foreign proceeding:" "(1) a proceeding; (2) that is either judicial or administrative; (3) that is collective in nature; (4) that is in a foreign country; (5) that is authorized or conducted under a law related to insolvency or the adjustment of debts; (6) in which the debtor's assets and affairs are subject to the control or supervision of a foreign court; and (7) which is for the purpose of reorganization or liquidation." *In re Siu-Fung Ceramics Holdings Ltd.*, 2026 WL 382424 at *21 (Bankr. S.D. Tex. Feb. 10, 2026) (citing *In re Betcorp Ltd.*, 400 B.R. 266, 277 (Bankr. D. Nev. 2009) and *In re ABC Learning Ctrs.*, 445 B.R. 318, 327–28 (Bankr. D. Del. 2010) ("*ABC Learning I*") *aff'd*, 728 F.3d 301, 308 (3rd Cir. 2013) ("*ABC Learning II*")).

54.     A chapter 15 case is commenced by the filing of a petition by a "foreign representative." See 11 U.S.C. § 1515(a). The Bankruptcy Code defines a "foreign representative" as "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24).

55.     Section 1517(a) of the Bankruptcy Code provides that, after notice and a hearing, the Court shall enter an order recognizing a foreign proceeding if: (i) the petition meets the requirements of section 1515 of the Bankruptcy Code; (ii) the foreign representative applying for recognition is a person or body; and (iii) such foreign proceeding is a foreign main proceeding or nonmain proceeding within the meaning of section 1502 of the Bankruptcy Code. *See* 11 U.S.C. § 1517(a); *In re Ran*, 607 F.3d 1017, 1021 (5th Cir. 2010).

17

56.     To meet the requirements of section 1515 of the Bankruptcy Code, a foreign representative must apply for recognition of a foreign proceeding by filing: (i) a petition for recognition; (ii) evidence of the existence of the foreign proceeding and the appointment of the foreign representative (in the form of a certified copy of the relevant decision, a certificate from the relevant foreign court or otherwise); and (iii) a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative.  11 U.S.C. § 1515(a)–(b).

*ii.     Recognition of a Foreign Main Proceeding*

57.     Section 1517(b)(1) of the Bankruptcy Code provides that a foreign proceeding shall be recognized as a "foreign main proceeding" if it is pending in the country where the debtor has its COMI as of the date of the petition for recognition.  11 U.S.C. § 1502(4); *see In re Geden Holdings, Ltd.*, 674 B.R. 732, 743 (Bankr. S.D. Tex. 2025) (stating that COMI is determined as of the date of the chapter 15 petition).  Absent evidence to the contrary, a debtor's registered office is presumed to be its COMI.  11 U.S.C. § 1516(c); *see Ran*, 607 F.3d at 1022.  Legislative history indicates that this presumption was "designed to make recognition as simple and expedient as possible" in cases where COMI is not controversial.  H. Rep. 109-31 pt. 1, at 112–13 (2005).

58.     Courts in the Fifth Circuit and elsewhere have developed a list of non-exhaustive factors to assist with determining a debtor's COMI.  No individual factor is necessary or dispositive for the analysis, and such factors include but are not necessarily limited to: (i) the location of the debtor's headquarters; (ii) the location of those who manage the debtor; (iii) the location of debtor's primary assets; (iv) the location of most of the debtor's creditors; and (v) the jurisdiction whose laws would apply to most situations.  *See In re Stanford Int'l Bank, Ltd.*, 2012 WL 13093940 at *18 (N.D. Tex. July 30, 2012) (citing *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006)); *Ran*, 607 F.3d at 1023 (quoting *SPhinX* for the proposition that "[v]arious factors, singly or combined, could be relevant" to a COMI analysis).

18

59.     Courts in the Fifth Circuit also look to the "ascertainability" of a debtor's COMI as another critical element of the analysis, stating that "it is important that the debtor's COMI be ascertainable by third parties." *Stanford Int'l Bank*, 2012 WL 13093940 at *18 (quoting Ran, 607 F.3d at 1025).  To ensure the procedural fairness of the recognition and protect the interest of creditors, a determination of COMI should comport with reasoned creditor expectations.  *See SPhinX,* 351 B.R. at 117.   Additionally, because upon entering liquidation proceedings, the business of a debtor becomes primarily the liquidation of its assets, the location of the liquidation proceeding is a relevant factor to consider when assessing COMI.  *See Fairfield Sentry*, 714 F.3d at 132 (noting that "any relevant activities, including liquidation activities and administrative functions, may be considered in the COMI analysis"); *In re Modern Land (China) Co., Ltd.*, 641 B.R. 768, 790 (the fact that the debtor's primary business activity at the time of the chapter 15 petition was restructuring supported a finding of COMI in the jurisdiction of the restructuring proceeding).

### iii.     Recognition of a Foreign Nonmain Proceeding

60.     By contrast to foreign main proceedings, courts recognize a "foreign nonmain proceeding" where the debtor has an "establishment" in the foreign country where the proceeding is pending.  11 U.S.C. § 1517(b)(2).  "Establishment" is defined in the Bankruptcy Code as "any place of operations where the debtor carries out a nontransitory economic activity."  11 U.S.C. § 1502(2).  Unlike COMI, chapter 15 of the Bankruptcy Code provides no evidentiary presumption as to whether a debtor has an establishment in a particular jurisdiction.  The Bankruptcy Code also does not define "nontransitory economic activity," and, as courts have noted, "[t]here is relatively little U.S. authority construing the term 'establishment' as it is used in chapter 15."  *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 84 (Bankr. S.D.N.Y. 2011), *aff'd* 474 B.R. 88 (S.D.N.Y. 2012).  Indeed, "[n]either [c]hapter 15 nor its legislative history

19

explain what it means for a debtor to have 'any place of operations' or to have 'been carrying on a nontransitory economic activity' in a location." *See Ran*, 607 F.3d at 1027. Thus, whether an "establishment" exists in a particular location is a factual question on which a petitioner bears the burden of proof. *See id.* at 1026.

61.     Courts that have considered this question have determined a debtor has an "establishment" in a place where it has operations, conducts business, or otherwise carries out a nontransitory economic activity in that jurisdiction. *See, e.g.*, *In re Fairfield Sentry Ltd.*, No. 10 Civ. 7311 (GBD), 2011 WL 4357421 at *10 n.8 (S.D.N.Y. Sept. 16, 2011) (describing an establishment as "a local place of business"); *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 131 (Bankr. S.D.N.Y. 2007) ("*Bear Stearns I*"), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008) ("*Bear Stearns II*"); *In re Creative Fin. Ltd.*, 543 B.R. 498, 520 (Bankr. S.D.N.Y. 2016); *In re British Am. Ins. Co. Ltd.*, 425 B.R. 884, 916 (S.D. Fla. 2010). The determination of whether an "establishment" exists is based on the applicable facts at the time of the petition for recognition. *See, e.g.*, *Ran*, 607 F.3d at 1027 ("[t]he use of the present tense implies that the court's establishment analysis should focus on whether the debtor has an establishment in the foreign country where the bankruptcy is pending at the time the foreign representative files the petition for recognition under Chapter 15.").

62.     Several factors contribute to identifying an establishment, including "the economic impact of the debtor's operations on the market, the maintenance of a 'minimum level of organization' for a period of time, and the objective appearance to creditors whether the debtor has a local presence." *Millennium Glob.*, 458 B.R. at 85; *see Modern Land*, 641 B.R. at 784. A "showing of a local effect on the marketplace," *Creative Fin.*, 543 B.R. at 520, may be evidenced

20

by, among other things, "retain[ing] local counsel and a commitment of capital to local banks." *Millennium Glob.*, 458 B.R. at 85.

**B.      The Guernsey Proceedings Should be Recognized Under Chapter 15**

> *i.      The Debtors are Eligible for Relief under Section 109(a) of the Bankruptcy Code*

63.      Foreign debtors seeking relief under chapter 15 must satisfy the debtor eligibility requirements of 11 U.S.C. § 109(a).  Section 109(a) provides that "only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor" under the Bankruptcy Code.  *See Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238, 246–48 (2d Cir. 2013).  Section 109(a) does not require a specific quantum of property in the United States, nor does it indicate when or for how long such property must have a United States situs.  *See, e.g., Yukos Oil*, 321 B.R. at 407 (stating that courts routinely hold that nominal amounts of property located in the United States enable foreign corporations to qualify as debtors under section 109(a) of the Bankruptcy Code)*; In re Berau Cap. Res. Pte Ltd.*, 540 B.R. 80, 82 (Bankr. S.D.N.Y. 2015).

64.      Courts regularly hold that attorney retainers or other funds deposited in a U.S. bank account satisfy the "property in the United States" eligibility requirement of section 109(a).  *See e.g.*, Order, *In re Fossil (UK) Glob. Servs. Ltd.*, Case No. 25-90525 (CML) (Bankr. S.D. Tex.) (Nov. 12, 2025) ECF No. 39 (Chapter 15 case properly commenced where debtor's property in the United States as of the petition date took the form of an interest in a retainer account); *Yukos Oil*, 321 B.R. at 407 (presence of U.S. bank account sufficient to establish eligibility); *Siu-Fung*, 2026 WL 382424 at *23 ("…courts applying section 109(a) to Chapter 15 have routinely found an undrawn retainer in the possession of foreign representatives' counsel to constitute property in the United States" sufficient to satisfy the debtor-eligibility requirement).

21

65.     Here, as noted above, the Debtors satisfy section 109(a) because they have property in the United States and in this district in the form of the Retainer.  Foreign Representative Declaration ¶ 44.

ii.     *The Verified Petition Satisfies the Requirements of Section 1515 of the Bankruptcy Code*

66.     Each of the procedural requirements of section 1515 of the Bankruptcy Code is satisfied.

67.     *First*, the Petitioners properly commenced the Chapter 15 Cases in accordance with sections 1504 and 1509(a) of the Bankruptcy Code by filing the Verified Petition.  *See In re Vitro S.A.B. de CV*, 701 F.3d 1031, 1044 (5th Cir. 2012) (stating that "…a foreign representative must first petition a United States bankruptcy court for recognition of a foreign proceeding").

68.     *Second*, the Petitioners have submitted all documents and other information required by section 1515(b) of the Bankruptcy Code: certified copies of the Guernsey Liquidation Resolutions, which appointed the Petitioners as Joint Voluntary Liquidators of the Guernsey Funds and granted the Petitioners authority under the Guernsey Companies Law to bring and defend civil actions on behalf of the Guernsey Funds, which includes the power to act as foreign representatives of the Guernsey Funds in the Guernsey Proceedings.  Guernsey Counsel Declaration ¶ 28.

69.     *Finally*, the Petitioners have submitted in this Verified Petition all information required by section 1515(c) of the Bankruptcy Code (i.e., a statement by the Petitioners identifying any other foreign proceedings known to the Petitioners with respect to the Debtors), together with all other required disclosures regarding the Debtors in accordance with Bankruptcy Rules 1007(a)(4) and 7007.1.  *See supra* ¶ 9.  Accordingly, the requirements of section 1515 of the Bankruptcy Code are satisfied.

22

*iii.    The Guernsey Proceedings are Foreign Proceedings*

70.    The Guernsey Proceedings satisfy the definition of "foreign proceeding" for purposes of 1517(a)(1) of the Bankruptcy Code because they qualify under all seven elements contemplated by the statute.  Each of the Guernsey Proceedings is: (1) a proceeding; (2) that is either judicial or administrative; (3) that is collective in nature; (4) that is in a foreign country; (5) that is authorized or conducted under a law related to insolvency or the adjustment of debts; (6) in which the debtor's assets and affairs are subject to the control or supervision of a foreign court; and (7) which is for the purpose of reorganization or liquidation.  *See Betcorp*, 400 B.R. at 276–77; *see also Ran*, 607 F.3d at 1021 (citing the definition set forth in Betcorp with approval).[11]

a.    The Guernsey Proceedings are Proceedings

71.    First, the Guernsey Proceedings are "proceedings" because they provide "the acts and formalities set down in law so that courts, merchants and creditors can know them in advance and apply them evenly in practice." *Betcorp*, 400 B.R. at 277; *ABC Learning I*, 445 B.R. at 328 (citing *Betcorp*).  The definition of a "proceeding" stated in *Betcorp* is drawn from a "broader definition in order to achieve the statutory directive of interpretation consistent with the understandings and the usages of international law and the UNCITRAL Model Law." *Betcorp*, 400 B.R. at 277.  Courts in this Circuit have repeatedly used the UNICTRAL Model Law and EU Regulation on Insolvency for interpreting chapter 15 because "[t]he statutory intent to conform American law with international law is explicit" in the text of chapter 15. *Ran*, 607 F.3d at 1020. *See also Vitro*, 701 F.3d at 1048 ("…our decision is informed by consideration of the Model Law, and reports by the UNCITRAL Working Group on Insolvency Law").  This broad definition of

---

[11]    Courts in this Circuit have regularly applied the *Betcorp* and *ABC Learning I* factors to determine what constitutes a "foreign proceeding."  *See e.g., Siu-Fung*, 2026 WL 382424 at *21–22; *Stanford Int'l Bank,* WL 13093940 at *8.

"proceeding" also aligns with an historically broad approach to defining the scope of "foreign proceedings." *See In re Fracmaster, Ltd.*, 237 B.R. 627, 632 (Bankr. E.D. Tex. 1999) (holding, in a case decided before the adoption of chapter 15, "[t]he breadth of the definition of 'foreign proceeding' insures that issues arising from a wide range of foreign insolvency-related actions can be addressed under the auspices of § 304.").

72.     Under these principles, the Guernsey Proceedings are clearly "proceedings" under 11 U.S.C. § 101(23). "In the context of corporate insolvencies, the hallmark of a 'proceeding' is a statutory framework that constrains a company's action and that regulates the final distribution of a company's assets." *Betcorp*, 400 B.R. at 278. The Guernsey Companies Law establishes a comprehensive statutory framework for the voluntary liquidation of Guernsey entities. Among other things, the Guernsey Companies Law: (i) provides rights to interested parties by affording them the opportunity to petition the Guernsey Court to convert a voluntary liquidation into a compulsory liquidation; (ii) allows the Guernsey Court to remove and replace liquidators; (iii) mandates that a special resolution voluntarily appointing a liquidator cannot be set aside absent court intervention; and (iv) requires voluntary liquidators to convene annual meetings to provide progress reports on the liquidation. *See* Guernsey Counsel Declaration ¶¶ 23, 30–33.

73.     Furthermore, the Guernsey Companies Law constrains a company's actions in voluntary liquidation, and provides for both the cessation of the powers of the corporate directors and equity holders and penalties for any *ultra vires* actions of a director after a voluntary liquidation has been initiated. Guernsey Counsel Declaration ¶ 24; *see Betcorp*, 400 B.R. at 280 ("The fact that commencing this type of external administration terminates the authority of the company's directors, combined with the fact that the winding up cannot be stopped by the equity

24

interest holders once they have passed the special resolution, lends further support to a finding that this Australian legal process is a proceeding.").

74.     The Guernsey Companies Law also governs the Liquidators' distributions of the Debtors' assets.  Guernsey Counsel Declaration ¶ 27.  Under the Guernsey Companies Law, a company's assets shall be realized and shall be applied in satisfaction of the company's debts and liabilities *pari passu* and the Liquidators must distribute (unless the memorandum and articles provide otherwise) among the members according to their respective rights and interests in the company.  *Id.* ¶ 27.  This comprehensive scheme for the administration of the Guernsey Funds' assets and liabilities makes readily apparent that the Guernsey Proceedings qualify as "proceedings" within the meaning of section 101(23).  *See* Voluntary Petition, *In re Xenfin Fund 1 Trading Ltd.*, Case No. 21-10164 (MG) (Bankr. S.D.N.Y.) (Jan. 16, 2021), ECF No. 1 (finding, on a request for provisional relief, that "[t]here is a substantial likelihood that the Foreign Representatives will be able to demonstrate that the [debtor's Guernsey voluntary liquidation] is a foreign main proceeding pursuant to section 1517 of chapter 15 of the Bankruptcy Code"); Order, *In re Xenfin Fund 1 Trading Ltd.*, Case No. 21-16253 (AJC) (Bankr. S.D. Fla.) (Aug. 19, 2021), ECF No. 45 (granting recognition to the debtor's Guernsey voluntary liquidation).[12]

> b.     The Guernsey Proceedings are Administrative

75.     The Guernsey Proceedings are administrative in nature because the Liquidators conduct the affairs of the Debtors through administrative means such as convening meetings and issuing notices (which adopt a judicial character under certain circumstances).  Notably, to qualify

---

[12]     In the case *In re Xenfin Fund 1 Trading Ltd.*, the debtor initially petitioned for chapter 15 recognition of a Guernsey voluntary liquidation in the Bankruptcy Court for the Southern District of New York.  Concurrent with the petition, the debtor sought provisional relief for purposes of conducting discovery into the debtor's assets, which was granted.  Following the debtor's discovery efforts, venue was transferred to the Bankruptcy Court for the Southern District of Florida, which entered a final order granting recognition.

for chapter 15 recognition, a foreign proceeding need be only either judicial *or* administrative (not both simultaneously). *See In re Manley Toys Ltd.*, 580 B.R. 632, 639 (Bankr. D.N.J. 2018) (finding that a Hong Kong voluntary liquidation was "largely administrative in nature" and therefore satisfied this element of section 101(23)).

76.     Many of the Liquidators' tasks in the Guernsey Proceedings are administrative in nature, such as soliciting proofs of debt, collecting assets, making distributions in compliance with the liquidation prioritization scheme in the Guernsey Companies Law, convening meetings, preparing various reports and reviewing the assets and outstanding liabilities of the Debtors. Foreign Representative Declaration ¶¶ 34–36; *see Betcorp*, 400 B.R. at 280 (finding that an Australian voluntary liquidation was an administrative proceeding where the liquidators were tasked with sending notices of the liquidation and requesting proofs of debt).

77.     In addition to their baseline administrative nature, the Guernsey Proceedings may also become judicial if applications by the Liquidators or the Debtors' creditors invoke the Guernsey Court's supervisory authority or if the Guernsey Court exercises its powers to remove the Liquidators or convert the Guernsey Proceedings into compulsory liquidations. Guernsey Counsel Declaration ¶¶ 30–31. Here, and as described in more detail below, the Guernsey Court has exercised supervisory authority over the Guernsey Proceedings in connection with its consideration and approval of the Liquidators' applications for certain liquidation expense funding arrangements for SAM Diversified and SAM Trading and the tacit denial of the same for SGAS. Foreign Representative Declaration ¶¶ 40–41. Such implicit and explicit exercises of supervisory authority by the Guernsey Court clearly demonstrate that the Guernsey Proceedings can gain a judicial character beyond their default nature as administrative proceedings. *See Betcorp*, 400 B.R. at 280 (Australian voluntary liquidation was "generally, a proceeding with an administrative

character, although under certain circumstances the proceeding may temporarily become more appropriately characterized as judicial").

c.        The Guernsey Proceedings are Collective

78.    The Guernsey Proceedings are plainly collective in nature because they consider the rights and obligations of all creditors as opposed to a single creditor or class of creditors. *In re Ashapura Minechem Ltd.*, 480 B.R. 129, 136 (Bankr. S.D.N.Y. 2012); *In re Poymanov*, 571 B.R. 24, 33 (Bankr. S.D.N.Y. 2017) (same). "The 'collective proceeding' requirement is intended to limit access to chapter 15 to proceedings that benefit creditors generally and to exclude proceedings that are for the benefit of a single creditor." 8 Collier on Bankruptcy ¶ 1501.03 (16th ed. 2024). *See also Stanford Int'l Bank*, WL 13093940 at n.20 (describing that "[t]he notion of a 'collective' insolvency proceeding is based on the ability of a single insolvency representative to control the realization of assets for the purposes of pro rata distribution among all creditors…").

79.    The Guernsey Companies Law provides that, subject to any preferential payments required by applicable law or any agreement between a company and its creditors, the Liquidators must distribute the Guernsey Funds' assets first in satisfaction of liquidation costs and expenses, then to the Guernsey Funds' creditors "in satisfaction of the company's debts and liabilities pari passu," and thereafter to distribute any surplus among the Guernsey Funds' members (shareholders) "according to their respective rights and interests." See Guernsey Companies Law, Part XXII, Sections 397(1)(b), 404, 419(1)–(2); Guernsey Counsel Declaration ¶¶ 27–28. Obligations to secured creditors, if any, are satisfied first from the value of their collateral, and then on a *pari passu* basis with general creditors to the extent of any deficiency. Guernsey Counsel Declaration ¶ 27. The Liquidators have already made distributions in connection with the Guernsey Proceeding for SGAS. Foreign Representative Declaration ¶¶ 37–39.

27

80.     During the course of the Guernsey Proceedings, the Liquidators have invited all of the Debtors' creditors to submit proofs of debt. *Id.* ¶ 36. The Liquidators have also, from time to time and pursuant to the Guernsey Companies Law, convened meetings of creditors of the Guernsey Funds to provide status reports on the Liquidators' ongoing efforts. *Id.* ¶ 36. In advance of such meetings and pursuant to the Guernsey Companies Law, the Liquidators circulated notices to known creditors describing the appointment of the Liquidators, the rights of creditors in connection with the Guernsey Proceedings, and instructions for participation in creditors meetings. *Id.* ¶ 36. For the forgoing reasons, the Guernsey Proceedings are collective within the meaning of the Bankruptcy Code.

> d.     The Guernsey Proceedings Take Place in a Foreign Country.

81.     It is readily apparent that the Guernsey Proceedings take place in a foreign country because: (i) the Debtors are Guernsey companies and maintain registered offices there; (ii) the Liquidators were appointed pursuant to the Guernsey Companies Law, and, if applicable, the Guernsey Court can exercise and has exercised express and implicit authority over the Debtors and Liquidators (through the actual approval of funding applications for SAM Diversified and SAM Trading and the tacit denial of the same for SGAS); and (iii) the Debtors and the Guernsey Proceedings operate under (and are governed by) the Guernsey Companies Law. *Id.* ¶¶ 6, 40–41; Guernsey Counsel Declaration ¶ 20.

> e.     The Guernsey Proceedings are Authorized and Conducted Under a Law Related to Insolvency or the Adjustment of Debts

82.     The Guernsey Proceedings are plainly authorized or conducted under a law related to insolvency or the adjustment of debts, namely the Guernsey Companies Law.

83.     A foreign law may be "related to insolvency," even if it is a broad legal regime dealing with multiple components of corporate activity. *See, e.g., ABC Learning I*, 445 B.R. at

331; *Betcorp*, 400 B.R. at 282 (finding the insolvency law requirement satisfied via the broad Australian Corporations Act, which "regulates the whole of the corporate life-cycle" because it also dealt with debt wind-ups and because the Australian Legislature described the purpose of the law as "pursuant to a law relating to bankruptcy or corporate insolvency"); *Stanford Int'l Bank,* WL 13093940 at *8 (finding that the Antigua International Business Corporation Act qualified as a law related to insolvency or the adjustment of debts).

84.     Despite having a broad scope, the Guernsey Companies Law squarely provides specific procedures for managing corporate reorganization and insolvency.  Guernsey Counsel Declaration ¶ 20.  Indeed, the Guernsey Companies Law is tailored to, in part, regulate the insolvency and winddown procedures for companies in Guernsey.  *Id.* ¶ 20.  The Guernsey Companies Law authorizes resolutions for declaring a winddown and the appointment of liquidators, outlines the liquidators' powers and responsibilities, dictates the process for distribution of assets (including payment priority), lists sanctionable acts and corresponding penalties, and delineates the rights of stakeholders, including to petition for the conversion of the Guernsey Proceedings into compulsory liquidations.  Guernsey Counsel Declaration ¶¶ 28–33. All such powers are traditionally associated with an insolvency proceeding.

85.     For these reasons, it is clear that the Guernsey Proceedings are authorized or conducted under a law related to insolvency or the adjustment of debts.

f.      The Guernsey Proceedings Ultimately Subject the Debtors' Assets and Affairs to the Control or Supervision of a Foreign Court

86.     Under the Guernsey Companies Law, the Guernsey Court has significant supervisory authorities over the liquidation process, including the power to fill a vacant liquidator's position, set aside or amend any arrangement upon petition of an interested party,

29

remove any liquidator, and consider any application for a compulsory wind up of the Company. *See* Guernsey Counsel Declaration ¶¶ 30–31.

87.     Courts have held that the removal power over a liquidator and the right of interested parties to seek relief from a court are evidence that a foreign court is supervising the foreign insolvency process. *See ABC Learning I*, 445 B.R. at 331 (finding adequate control or supervision because, in part, "[a]n Australian court can remove a liquidator from his or her position for cause and appoint another liquidator"); *see also Betcorp*, 400 B.R. at 284 (noting that an Australian voluntary liquidation regime "allows both liquidators and creditors to request a court to determine 'any question arising in the winding up of a company.'").   Indeed, such courts have explicitly rejected the view that a court must exercise "day-to-day" case management over a liquidation or insolvency process, in part because "U.S. Bankruptcy Courts also give deference to business judgments and do not direct the daily activities of debtors, and the majority of U.S. bankruptcies proceed with minimal court involvement." *See ABC Learning I*, 445 B.R. at 332.

88.     The Guernsey Court's supervisory authority in the Guernsey Proceedings is not merely theoretical, as the Guernsey Court has exercised such authority in connection with its consideration and approval of the Liquidators' applications for certain liquidation expense funding arrangements for SAM Diversified and SAM Trading and the implied denial of the same for SGAS.[13]  Such exercises of supervisory authority by the Guernsey Court clearly demonstrate that the Guernsey Proceedings are ultimately subject to the supervision of a foreign court as provided by section 101(23).

---

[13]     As detailed in the Foreign Representative Declaration, following a hearing on the Liquidators' applications, the Guernsey Court entered an order approving the applications related to SAM Diversified and SAM Trading. Foreign Representative Declaration ¶ 41.  The Liquidators subsequently withdrew the application related to SGAS because the Guernsey Court indicated at the hearing that it would rather the Liquidators utilize the realizations made by the liquidation estate to fund the liquidation.  Foreign Representative Declaration ¶ 40.  The Guernsey Court's approval of certain applications and tacit denial of another demonstrates the supervision of the Guernsey Court over the Guernsey Proceedings and the Debtors' affairs and assets.

g.      The Guernsey Proceedings are for the Purposes of Liquidation

89.      The Guernsey Proceedings were fundamentally intended for the purposes of "reorganization or liquidation." 11 U.S.C. § 101(23).  One of the express purposes of the Guernsey Companies Law is to permit a debtor to voluntarily liquidate, as was the case for the Debtors. Guernsey Counsel Declaration ¶ 20.  The Guernsey Companies Law states that the "consequences of a resolution to wind up" require the company to "cease to carry on business except in so far as may be expedient for the beneficial winding up of the company" and instead turn to focus on wind-up operations.  *See* Guernsey Companies Law, Part XXII, Section 394(1); Guernsey Counsel Declaration ¶ 24.  By availing themselves of the Guernsey Companies Law winding-up process through the execution of a winding up resolution, and by following applicable procedures, the Debtors' members evidenced an intent to reorganize or liquidate the Debtors through the Guernsey Proceedings.  Foreign Representative Declaration ¶¶ 31–33.

iv.      *The Petitioners are the Duly Appointed Foreign Representatives of the Debtors*

90.      Section 1517(a) of the Bankruptcy Code requires that a foreign representative applying for recognition be a person or body.  *See* 11 U.S.C. § 1517(a)(2).  Here, the Petitioners are individuals, which is included in the term "person," 11 U.S.C. § 101(41), who have been duly (i) appointed to act as the Debtors' foreign representative in respect of the Guernsey Proceedings for purposes of the Chapter 15 Cases, and (ii) authorized to commence the Chapter 15 Cases.

91.      Petitioners were duly appointed pursuant to Guernsey Liquidation Resolutions by the members of each Debtor to serve as Liquidators for each Debtor in each Debtor's respective Guernsey Proceeding.   Foreign Representative Declaration ¶¶ 31–33; Guernsey Counsel Declaration ¶¶ 11, 15, 19  As explained in the Guernsey Counsel Declaration, the Liquidators' appointments vested them the sole power to wind down the Guernsey Funds, and with various

31

powers and authorities under the Guernsey Companies Law, including the authority to bring and defend civil actions on behalf of the Guernsey Funds.  Guernsey Counsel Declaration ¶ 28.

92.     Such powers to bring and defend civil actions squarely authorizes Petitioners to serve as foreign representatives in a chapter 15 proceeding in the United States in conjunction with the Guernsey Proceedings, and thus satisfies sections 101(24) and 1517(a)(2) of the Bankruptcy Code.  *Id.* ¶ 29; *see In re Vitro, S.A.B. de C.V.*, 470 B.R. 408 (Bankr. N.D. Tex. 2012), *aff'd*, 701 F.3d 1031 (5th Cir. 2012) (holding that an individual appointed as foreign representative by the debtor's board in anticipation of a Mexican *concurso* proceeding, which contemplates self-management by the debtor during the proceeding similar to that of a debtor-in-possession, fit within the scope of the Bankruptcy Code's definition of "foreign representative," and recognizing the individual as the foreign representative); *In re Serviços de Petróleo Constellation S.A.*, 600 B.R. 237, 270 (Bankr. S.D.N.Y. 2019) (finding a foreign representative appointed pursuant to resolution of the debtors' boards is a proper "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code and thus meets the requirements of 1517(a)(2) of the Bankruptcy Code).

**C.     The Guernsey Proceedings are "Foreign Main Proceedings" Because the Debtors' Centers of Main Interests are in Guernsey**

93.     The Guernsey Proceedings are foreign main proceedings because the Debtors' centers of main interests are each in Guernsey.  11 U.S.C. § 1517(b)(1).

94.     As noted above, a debtor's registered office is presumed to be its COMI.  11 U.S.C. § 1516(c).  Each Debtor is incorporated under the laws of Guernsey, and each maintains a registered office in Guernsey, creating a presumption that Guernsey is their center of main interests.  Foreign Representative Declaration ¶ 6; 11 U.S.C. § 1516(c).  The registered offices of SGAS, SAM Trading and SAM Diversified are each at Ground Floor, Dorey Court, Admiral Park,

32

St Peter Port, GY1 2HT, Guernsey.  Foreign Representative Declaration ¶ 19.  Because the Debtors' registered offices are each in Guernsey, this Court should find each Debtors' COMI is in Guernsey, consistent with the statutory presumption.

95.     Even if this Court decides to look past the statutory presumption, each Debtor's COMI is still Guernsey based on the various, non-exhaustive factors courts commonly consider when assessing COMI.  Such factors generally include, but are not limited to: (i) the location of the debtor's headquarters; (ii) the location of those who actually manage the debtor; (iii) the location of the debtor's primary assets; (iv) the location of the majority of the debtor's creditors or a majority of the creditors who would be affected by the case; and (v) the jurisdiction whose law would apply to most disputes.  *See Bear Stearns II,* 389 B.R. at 336 (citing *SPhinX*, 351 B.R. at 117); *Ran*, 607 F.3d. at 1023.  When considering COMI factors, the flexibility inherent in chapter 15 strongly counsels that this Court "should not apply such factors mechanically.  Instead, [the factors] should be viewed in light of chapter 15's emphasis on protecting the reasonable interests of parties in interest pursuant to fair procedures and the maximization of the debtor's value." *SPhinX*, 351 B.R. at 117.[14]

96.     It is clear that recognition of Guernsey as each Debtors' COMI is the most straightforward means of protecting both the Debtors' estates and parties in interest.  As described above, the Debtors each maintain a registered office in Guernsey, are subject to Guernsey law, file their taxes in Guernsey and must file their registrations with the Guernsey Registrar.  Foreign Representative Declaration ¶ 46.  The Debtors are additionally subject to the oversight of the

---

[14]     Notably, the fact that the Liquidators are not resident in Guernsey does not compel a different result. *Modern Land,* 641 B.R. at 780 (recognizing a Cayman Islands scheme as the debtor's foreign main proceeding, despite the undisputed fact that the board, which managed the debtor, was not resident in, and did not make its decisions from, the Cayman Islands).

33

Guernsey Financial Services Commission.[15]  *Id.* at ¶ 46.  Furthermore, all of the Debtors actively maintain independent operating bank accounts in Guernsey, and SAM Trading and SAM Diversified's primary non-cash assets are their protected cells' investments in two Guernsey entities (through which they hold indirect investments in the broader Sciens Group).  *Id.* at ¶ 25.[16] The contracts governing the majority of the Guernsey Funds' liabilities are also subject to Guernsey law, and Guernsey law would apply to most disputes brought in the Guernsey Proceedings.  *See Betcorp*, 400 B.R. at 292 ("The voluntary winding up is being conducted pursuant to the Australian [insolvency regime] and therefore this is the law that would apply to most disputes."); Foreign Representative Declaration ¶ 26.

97.     The majority of the Debtors' creditors are located in Guernsey, and the Liquidators' notices to the Debtors' creditors have emphasized that the Guernsey Proceedings are subject to the Guernsey Companies Law.  *Id.* ¶ 46.  It is plain that the intention of the Guernsey Proceedings is to return value to the Guernsey Funds' creditors and stakeholders (each of whom knew at the time of their investments that they were investing in entities that had been incorporated in Guernsey for decades and that were subject to the Guernsey Companies Law and potential winding up in Guernsey voluntary liquidations).  *Id.* ¶ 26.  *See Constellation*, 600 B.R. at 281 (statements made to investors in debtor's offering memorandum supported finding of COMI in jurisdiction of incorporation, rather than the location of the foreign representative); *In re OAS S.A.*, 533 B.R. 83 (Bankr. S.D.N.Y. 2015) at 101–3 (reviewing offering memorandum to establish noteholder expectations as part of a COMI analysis).

---

[15]     The Liquidators have requested deregistration of the Guernsey Funds' authorizations with the Guernsey Financial Services Commission, which may be granted during the pendency of these Chapter 15 Cases.

[16]     Those Guernsey entities, SAM Global Diversified Investments Limited and SAM Opportunity Investments Limited, have both commenced voluntary liquidations under the Guernsey Companies Law in substantially similar form to SGAS, SAM Trading, and SAM Diversified.  Foreign Representative Declaration ¶ 23.  However, while reserving all rights, SAM Global Diversified Investments Limited and SAM Opportunity Investments Limited are not seeking Chapter 15 recognition at this time.

98.     Such considerations weigh strongly in favor of a determination that each Debtor has its COMI in Guernsey.  Indeed, any alternative finding would be resoundingly contrary to the reasoned expectations of the Debtors' creditors and investors, the Debtors' regulators and the Guernsey Court.  *See Fairfield Sentry*, 714 F.3d at 136 (emphasizing that courts should focus on "regularity and ascertainability" when assessing COMI); *see also Modern Land*, 641 B.R. at 789 (finding that "definitive creditor expectations" and participation of the local court weighed in favor of a holding that the debtor's COMI was in the jurisdiction of its registered office and foreign proceeding).

99.     For these reasons, recognition of the Guernsey Proceedings as the Debtors' foreign main proceedings is both plainly supported by the facts of the Guernsey Funds' businesses and procedurally fair to parties in interest.  The Petitioners therefore respectfully request that this Court recognize the Guernsey Proceedings as the Debtors' foreign main proceedings.

**D.      In the Alternative, the Guernsey Proceedings are "Foreign Nonmain Proceedings"**

> *i.      The Debtors have Establishments in Guernsey and the Guernsey Proceedings Qualify for Recognition as Foreign Nonmain Proceedings*

100.    Even if the Court does not find the Debtors' COMI in Guernsey, the Debtors maintain establishments in Guernsey sufficient for this Court to recognize the Guernsey Proceedings as foreign nonmain proceedings.  *See* 11 U.S.C. § 1502(2).; 11 U.S.C. § 1517(b)(2).

101.    A debtor's establishment can be found, and therefore a foreign nonmain proceeding can be recognized, where the debtor has operations, conducts business, or otherwise carries out a nontransitory economic activity in a jurisdiction.  In this case, the Debtors carry out significant nontransitory economic activity with a "local effect on the marketplace" in Guernsey that rises above mere record keeping or property maintenance.  *See Creative Fin.*, 543 B.R. at 520.  The Petitioners submit that the evidence described above in support of a finding of COMI in Guernsey

35

for each of the Debtors also provides sufficient evidence that each of the Debtors has a nontransitory impact on the Guernsey marketplace and therefore maintains an establishment in Guernsey. As noted above, each of the Debtors has a bank account in Guernsey, and a majority of the Debtors' creditors are also located in Guernsey. Foreign Representative Declaration ¶¶ 25, 46. All of the Debtors have been incorporated Guernsey entities for at least twenty years, with dates of incorporation between March 18, 1997, and November 21, 2001. *Id.* at ¶ 6. The Debtors also retained Guernsey legal counsel, further contributing to the local economy in a nontransitory manner. *See Millennium Glob.*, 458 B.R. at 85 (hiring local counsel and establishing local bank accounts is evidence of economic activity with nontransitory impact).

102.    For these reasons, in the event that the Court decides not to grant foreign main recognition, the Court should find that each of the Debtors has the "establishment" in Guernsey sufficient to support the recognition of the Guernsey Proceedings as the "foreign nonmain proceedings" of each Debtor.

**E.    Discretionary Relief is Necessary and Appropriate to Effectuate the Guernsey Proceedings and Should be Granted**

103.    Under section 1521 of the Bankruptcy Code, "any appropriate" discretionary relief is available upon recognition of a foreign proceeding, whether or not a foreign proceeding is main.[17] 11 U.S.C. § 1521(a) ("Upon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of the

---

[17]    In *In re Vitro*, the Court of Appeals for the Fifth Circuit considered the relationship between sections 1521 and 1507 of the Bankruptcy Code and established a framework for considering requests for relief under chapter 15. *In re Vitro*, 701 F.3d at 1056. Under the *Vitro* analysis, a court should initially consider whether the requested relief falls under one of the explicit provisions of section 1521. *Id.* If it does not, then the court should consider whether the requested relief constitutes "appropriate relief" under section 1521(a)(7), which the Court of Appeals for the Fifth Circuit held to be coextensive with relief provided under former section 304 of the Bankruptcy Code, the precursor to chapter 15, or otherwise available in the United States. *See id.* at 1056-57. Finally, if the requested relief goes beyond the relief previously available under section 304 or currently available under U.S. law, then a court should consider section 1507, which allows for relief "more extraordinary" than that provided under section 1521. *Id.* at 1057. The relief requested in the Verified Petition is appropriate under sections 1521 and 1507 and should be granted.

36

debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief"); *see also In re Avanti Commc'ns Grp. PLC*, 582 B.R. 603, 612 (Bankr. S.D.N.Y. 2018) ("The discretion that is granted is 'exceedingly broad,' since a court may grant 'any appropriate relief' that would further the purposes of chapter 15 and protect the debtor's assets and the interests of creditors.") (internal citations omitted).

104.    Courts may grant relief under section 1521 if the interests of creditors and other interested parties, including the debtor, are sufficiently protected. 11 U.S.C. § 1522(a). Such relief under section 1521 of the Bankruptcy Code includes:

i.      staying the commencement or continuation of an individual action or proceeding concerning the debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520(a);

ii.     staying execution against the debtor's assets to the extent it has not been stayed under section 1520(a);

iii.    suspending the right to transfer, encumber or otherwise dispose of any assets of the debtor to the extent this right has not been suspended under section 1520(a);

iv.     providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities;

v.      entrusting the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the foreign representative or another person, including an examiner, authorized by the court;

vi.     extending relief granted under section 1519(a); and

vii.    granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a).

105.    The Petitioners contend that the discretionary relief requested, as described above, is necessary for the benefit of the Debtors, their creditors and parties-in-interest because it will protect the assets of the Debtors and empower the Petitioners to realize upon such assets as part of the Guernsey Proceedings.

37

106.     The Petitioners request the Court exercise its discretion under sections 105, 1507, and 1521 to grant the requested relief insofar as such relief exceeds that which is available automatically under section 1520 upon recognition of the Guernsey Proceedings as foreign main proceedings. [18]  Granting such relief is consistent with the goals of international cooperation embodied in chapter 15 of the Bankruptcy Code and the public policy of the United States, and is necessary to effect the Guernsey Proceedings.  Courts in this district have frequently granted equivalent discretionary relief under section 1521 upon recognition of chapter 15 petitions in other cases.  *See, e.g.*, Order, *In re Fossil (UK) Glob. Servs. Ltd.*, Case No. 25-90525 (CML) (Bankr. S.D. Tex.) (Nov. 12, 2025) ECF No. 39 (granting discretionary relief under section 1521); Order, *In re CB&I UK Ltd., et al.*, Case No. 23-90795 (CML) (Bankr. S.D. Tex) (March 22, 2024), ECF No. 160 (same); Order, *In re Rock Int'l Inv. Inc.*, Case No. 20-35623 (MI) (Bankr. S.D. Tex.) (Dec. 11, 2020) ECF No. 34 (same); Order, *In re Q'Max Sols., Inc.*, Case No. 20-34791 (MI) (Bankr. S.D. Tex.) (Oct. 29, 2020) ECF No. 64 (same).  If likewise granted in these Chapter 15 Cases, such relief would also promote the objectives of chapter 15 enumerated in section 1501(a) of the Bankruptcy Code.

---

[18]     If the Court finds that the Guernsey Proceedings are foreign nonmain proceedings, the Petitioners submit that the standard for issuing injunctions under sections 1521(a)(1)–(3) has been met.  *See Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*, 600 F.2d 1184, 1187 (5th Cir. 1979) (describing factors for injunctive relief).  Given the broad flexibility afforded to courts in fashioning discretionary relief under section 1521 and the frequency with which courts approve related stays, the Petitioners submit that there is a substantial likelihood that the Court will determine that such relief is necessary and appropriate.  *See, e.g.*, Order, *In re BOS Sols. LTD.*, Case No. 20-32465 (DRJ) (Bankr. S.D. Tex.) (May 19, 2020) ECF No. 41 (granting injunctive relief under section 1521); Order, *In re Entrec Corp., et al.*, Case No. 20-32643 (MI) (Bankr. S.D. Tex.) (May 29, 2020) ECF No. 36 (same).  The requested relief, if granted, would benefit the Debtor's creditors as a whole by facilitating the Petitioners' orderly realization upon the investment assets of the Guernsey Funds.  Without the requested relief, the Petitioners will be frustrated in performing their duties under the Guernsey Companies Law, which will harm both the Debtors and their creditors, demonstrating that the harm imposed upon the Debtors by the absence of this relief substantially outweighs any risk to the Debtors' creditors, who will have ample opportunity to participate in the Chapter 15 Cases to protect any rights they may have against the Guernsey Funds.  Lastly, the requested relief will not disserve the public interest.  To the contrary, granting the relief serves the public interest because it facilitates a cross-border process for the benefit of all the Debtors' creditors and stakeholders.  *See Cunard S.S. Co. Ltd. v. Salen Reefer Svcs. A.B.*, 773 F.2d 452, 458 (2d Cir. 1985) ("The granting of comity to a foreign bankruptcy proceeding enables the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion.").

## NOTICE

107. Contemporaneously with this Verified Petition, the Petitioners have filed an Emergency Motion Pursuant to Federal Rules of Bankruptcy Procedure 2002 and 9007 for Entry of an Order (i) Scheduling Recognition Hearing, and (ii) Specifying Form and Manner of Service of Notice (the "Notice Motion"). Notice of the Verified Petition has been provided to the Notice Parties as set forth in the Notice Motion. The Debtors will provide such other or further notice as the Court directs in accordance with the order entered on the Notice Motion.

## NO PRIOR REQUEST

108. No previous request for the relief requested herein has been made to this or any other court.

WHEREFORE, the Petitioners respectfully request that the Court: (i) grant the Verified Petition and enter the Proposed Order annexed hereto as **Exhibit A** recognizing the Guernsey Proceedings as the foreign main proceedings for the Debtors and granting the requested relief in connection therewith; and (ii) grant such other and further relief as the Court deems just and proper.

Houston, Texas
July 7, 2026

**BONDS ELLIS EPPICH SCHAFER JONES LLP**

/s/ *Joshua N. Eppich*
Joshua N. Eppich (Texas Bar No. 24050567)
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
Telephone: 817-405-6900
Facsimile: 817-405-6902
Email: joshua@bondsellis.com

-and-

Ken Green (Texas Bar No. 24036677)
402 Heights Boulevard
Houston, Texas 77007
Telephone: 713-335-4990
Facsimile: 713-335-4991
Email: ken.green@bondsellis.com

*Co-counsel for the Foreign Representatives of Sciens Group Alternative Strategies PCC Limited and its affiliated debtors*

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

/s/ *Thomas S. Kessler*
Thomas S. Kessler
Travis Arbon
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999
Email: tkessler@cgsh.com
Email : tarbon@cgsh.com
*Pro hac vice admission pending*

*Co-counsel for the Foreign Representatives of Sciens Group Alternative Strategies PCC Limited and its affiliated debtors*

40

## VERIFICATION OF CHAPTER 15 PETITION

Pursuant to 28 U.S.C. § 1746, we, Andrew Richard Victor Morrison and David Martin Griffin, declare under penalty of perjury under the laws of the United States of America as follows:

We are the authorized foreign representatives of the Debtors with respect to the Guernsey Proceedings for purposes of the Chapter 15 Cases. We declare under penalty of perjury that the factual contents of the foregoing Verified Petition, as well as the factual contents of each of the attachments and appendices thereto, are true and accurate to the best of our knowledge, information, and belief, and we respectfully represent as follows:

- We are the joint voluntary liquidators of SGAS, SAM Trading and SAM Diversified.

- On June 13, 2025, by resolution, the voting members of SGAS, among other things, (i) authorized the commencement of a Guernsey Proceeding with respect to SGAS, and (ii) appointed us as the joint voluntary liquidators for such Guernsey Proceeding under the Guernsey Companies Law, which authorized us to act in the Guernsey Proceeding for SGAS and granted us authority pursuant to the Guernsey Companies Law to bring and defend civil actions on behalf of SGAS. Accordingly, we are fully authorized to take related actions as the Foreign Representatives of SGAS.

- On June 13, 2025, by resolution, the voting members of SAM Trading, among other things, (i) authorized the commencement of a Guernsey Proceeding with respect to SAM Trading, and (ii) appointed us as the joint voluntary liquidators for such Guernsey Proceeding under the Guernsey Companies Law, which authorized us to act in the Guernsey Proceeding for SAM Trading and granted us authority pursuant to the Guernsey Companies Law to bring and defend civil actions on behalf of SAM Trading. Accordingly, we are fully authorized to take related actions as the Foreign Representatives of SAM Trading.

- On August 13, 2025, by resolution, the voting members of SAM Diversified, among other things, (i) authorized the commencement of a Guernsey Proceeding with respect to SAM Diversified, and (ii) appointed us as the joint voluntary liquidators for such Guernsey Proceeding under the Guernsey Companies Law, which authorized us to act in the Guernsey Proceeding for SAM Diversified and granted us authority pursuant to the Guernsey Companies Law to bring and defend civil actions on behalf of SAM Diversified. Accordingly, we are fully authorized to take related actions as the Foreign Representatives of SAM Diversified.

Unless otherwise indicated, all facts set forth in this Verified Petition are based upon: (i) our review of relevant information, data and documents (including oral information) furnished

41

to us by the Debtors' officers, directors, and professionals; or (ii) our analyses of the information we have received on the Debtors' operations and financial condition. We have also been involved in all major discussions with stakeholders, including the Debtors' primary financial creditors and shareholders. We are each an individual over the age of 18. If called to testify, we will each do so competently and based on the facts set forth herein.

53 Market Street, Suite 3206
Camana Bay, Grand Cayman
Cayman Islands, KY1-1203
Dated: July 7, 2026

Respectfully Submitted,


*/s/ Andrew Richard Victor Morrison*
Andrew Richard Victor Morrison

*Joint Voluntary Liquidator of SGAS, SAM Trading, and SAM Diversified, and Authorized Foreign Representative of the Debtors*


*/s/ David Martin Griffin*
David Martin Griffin

*Joint Voluntary Liquidator of SGAS, SAM Trading, and SAM Diversified, and Authorized Foreign Representative of the Debtors*

42

**CERTIFICATE OF SERVICE**

I certify that on July 7, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ Eric T. Haitz